**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Miguel QUARANIBAL, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 2000.

Filed Dec. 4, 2000.

Robert L. Marks, Danville, for appellant.

William S. Kreisher, Asst. Dist. Atty., Bloomsburg, for Com., appellee.

Before CAVANAUGH, STEVENS and HESTER, JJ.

HESTER, J.:

¶ 1 Appellant, Miguel Quaranibal, appeals the November 12, 1999 order denying his petition for relief filed pursuant to

the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* We affirm.

¶ 2 The facts underlying this action are as follows. On November 7, 1997, Appellant and two co-conspirators participated in a drive-by shooting. They fired numerous shots at a home and multiple automobiles located on Mulberry and 11th Streets in Columbia County. Police apprehended only one of the three perpetrators, Reyes Cardona, at the time of the incident. Residents provided descriptions of the other two actors. On January 16, 1998, Cardona related the names and addresses of his accomplices. He stated he did not inform police of their identity earlier out of fear of retaliation against his wife.

¶ 3 On February 4, 1998, Appellant was arrested as a suspect in the November 7, 1997 shooting. He subsequently was charged with five counts of recklessly endangering another person, six counts of criminal mischief and one count of disorderly conduct. On August 11, 1998, Appellant waived his right to a jury trial. On September 21, 1998, following a bench trial on September 17, President Judge Keller found Appellant guilty of all charges except disorderly conduct. Appellant was sentenced that same day to three to twelve months on each of the eleven counts to run consecutively, for a total sentence of two-and-one-half to ten years imprisonment. The court specified that this time was to be served as a county sentence with state parole.

¶ 4 On November 23, 1998, Appellant filed a notice of appeal alleging an invalid waiver of jury trial and prosecutorial misconduct. The Commonwealth filed a cross appeal alleging that the trial court erred in not requiring Appellant to serve his sentence in a state correctional facility. On May 20, 1999, Appellant and the Commonwealth both agreed to withdraw their appeals.

¶ 5 On May 24, 1999, Appellant filed a PCRA petition. Appellant subsequently sought new counsel. On October 20, 1999, new counsel filed an amended petition for post conviction relief. On October 28, 1999, the trial court held a PCRA hearing. The trial court denied PCRA relief on November 12, 1999. This appeal followed.

¶ 6 Under 42 Pa.C.S. 9545(b)(1), all PCRA petitions must be filed within one year of when a defendant's judgment of sentence becomes final. Appellant was sentenced on September 21, 1998. Appellant appealed the decision on November 23, 1998. The Commonwealth also filed an appeal, and Appellant withdrew his appeal on May 20, 1999. Appellant filed a PCRA appeal four days later on May 24, 1999. Appellant's PCRA petition was subsequently was amended by new counsel, and the instant petition was filed on October 20, 1999. Accordingly, we find Appellant's PCRA petition timely.

¶ 7 Initially, we consider our scope of review.

Our scope of review when examining a PCRA court's denial of relief is limited to determining whether the court's findings are supported by the record and the order is otherwise free of legal error. *Commonwealth v. Morales,* 549 Pa. 400, 407, 701 A.2d 516, 520 (1997); *Commonwealth v. Carbone,* 707 A.2d 1145, 1148 (Pa.Super.1998). We will not disturb findings that are supported by the record. *Commonwealth v. Yager,* 454 Pa.Super. 428, 685 A.2d 1000, 1003 (1996) (*en banc* ), appeal denied, 549 Pa. 716, 701 A.2d 577 (1997). Additionally, there is no absolute right to a hearing pursuant to the Post Conviction Relief Act (PCRA). *Commonwealth v. Neal,* 713 A.2d 657, 660 (Pa.Super.1998) (citations omitted). The post-conviction court may elect to dismiss a petition if it has thoroughly reviewed the claims presented and determined that they are utterly without support in the record.

*Commonwealth v. Brady,* 741 A.2d 758, 763 (Pa.Super.1999).

¶ 8 This appeal focuses only on the claimed violation of a federal law. Appellant, a citizen of El Salvador, claims that

he is entitled to post conviction relief in the form of a new trial because, upon his arrest, he was not informed of his right under the Vienna Convention, 21 U.S.T. 77, to contact the El Salvadoran consulate. It is undisputed that Appellant was not notified of his right to contact the consulate. Appellant alleges that "he was prejudiced by not having the Consulate to advise or assist him in preparing his legal defense and helping him understanding [*sic* ] his legal rights." Appellant's Brief at 10.

¶ 9 To be eligible for post conviction relief, Appellant must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the errors enumerated in the Act and that the issues raised have not been previously litigated or waived. 42 Pa.C.S. § 9543; *Commonwealth v. Carpenter*, 555 Pa. 434, 725 A.2d 154 (1999). An issue will be deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial ... on appeal or in a prior state post conviction proceeding." 42 Pa.C.S. § 9544(b). Appellant may be eligible for relief if, among other things, the conviction or sentence resulted from "[a] violation of the ... laws of the United States, which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. 9543(a)(2)(i).

■ ¶ 10 The Vienna Convention is a 79 article, multilateral treaty to which approximately 160 countries, including the United States and El Salvador, are signatories. The treaty was negotiated in 1963 and ratified by the United States in 1969. *U.S. v. Lombera–Camorlinga*, 206 F.3d 882 (9th Cir.2000). As a ratified treaty, the Vienna Convention has the status of federal law. "[T]reaties are recognized by our Constitution as the supreme law of the land." *Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). U.S.

Constitution, Article VI, clause 2 (all treaties shall be supreme law of the land).

¶ 11 Article 36(1)(b) of the Convention provides:

*[I]f he so requests,* the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State, if within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication address to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authority without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph:

21 U.S.T. 77, 101 (emphasis added). Article 36(1)(c) gives consular officers the right to visit and correspond with the detained foreign national and to arrange for the foreign national's legal representation. *Id.* In a number of instances, bilateral agreements direct that " 'mandatory notification' must be made to the nearest consulate or embassy 'without delay,' 'immediately,' or within the time specified in a bilateral agreement between the United States and a foreign national's country, regardless of whether the foreign national requests such notification." U.S. Depart. of State, *Consular Notification and Access* 14 (1998). No such bilateral agreement exists between the United States and El Salvador. *Id.* at 5.

■ ¶ 12 "Treaties do not generally create rights that are privately enforceable in the federal courts." *United States v. Li*, 206 F.3d 56, 60 (1st Cir.2000) (whether or not Vienna Convention creates individual rights, suppression of evidence or dismissal of indictment not appropriate remedies). In regard to the Vienna Convention, the U.S. Supreme Court has found that "neither the text nor the history of the Vienna Convention clearly provides a ... right of action in United States' courts to set aside a criminal conviction and sentence for vio-

lation of consular notification provisions." *Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998); *U.S. v. Ademaj*, 170 F.3d 58 (1st Cir.1999) (Vienna Convention prescribes no judicial remedy or other recourse for its violation); *Murphy v. Netherland*, 116 F.3d 97 (4th Cir. 1997) (Vienna Convention sets out rights between signatory nations and does not create rights under U.S. Constitution); *U.S. v. Lombera–Camorlinga*, 206 F.3d 882 (9th Cir.2000) (violation of Vienna Convention does not require suppression of subsequently obtained evidence).

■ ¶ 13 Whether or not the Vienna Convention creates a privately enforceable right is a question we need not address due to the fact that Appellant has waived the issue. As previously stated, to be eligible for post conviction relief, Appellant must plead and prove by a preponderance of the evidence that the issue raised has not been waived. 42 Pa.C.S. § 9543. An issue is deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial ... on appeal or in a prior state post conviction proceeding." 42 Pa.C.S. § 9544(b). Here, the right of consular notification, which by the terms of the Vienna Convention attaches upon arrest, could have been raised before trial, at trial, or on direct appeal. The issue was not raised at any of these points. The issue was raised for the first time by new counsel in a post conviction petition as a claim falling under section 9543 (a violation of the laws of the United States), 42 Pa. C.S. § 9543(a), and without any claim of the ineffective assistance of prior counsel for failure to raise the issue. As such, the issue is waived and not cognizable as a basis for relief.[1] *Commonwealth v. Ragan*, 560 Pa. 106, 743 A.2d 390 (1999).

¶ 14 Further, the United States Supreme Court has plainly stated that a treaty does not trump procedural rules. "[W]hile we should give respectful consideration to the interpretation of an interna-

tional treaty rendered by an international court with jurisdiction to interpret such, it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that state." *Breard v. Greene*, 523 U.S. 371, 375, 118 S.Ct. 1352, 1354, 140 L.Ed.2d 529 (1998).

¶ 15 In *Breard*, a death-sentenced prisoner and citizen of Paraguay filed a petition for habeas relief arguing, for the first time, that his conviction and sentence should be overturned because of alleged violations of the Vienna Convention. Breard contended that, despite the procedural default of his claim, his Vienna Convention claim could nonetheless be heard in federal court because the Convention is "'the supreme law of the land' and thus trumps the procedural default doctrine." 523 U.S. at 375, 118 S.Ct. 1352, 1354. The U.S. Supreme Court rejected this argument. "Having failed [to assert this claim in state court proceedings, Breard] cannot raise a claim of violation of those rights now on federal habeas review." *Id.* at 376, 523 U.S. 371, 118 S.Ct. 1352, 1355.

■ ¶ 16 Even if the Vienna Convention issue were properly before this Court, under the terms of the PCRA, Appellant additionally must demonstrate that in the circumstances of the particular case, the claimed violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i).

¶ 17 Here, the trial court definitively found that the truth-determining process was not compromised and Appellant was not prejudiced by failure to notify him of his right to contact the El Salvadoran consulate upon arrest.

In this case the Defendant understood and spoke the English language as evidenced both at trial and the [PCRA]

---

1. Appellant does not raise the allegation that prior counsel was ineffective for failing to present this issue during trial and the prior, discontinued appeal.

hearing (when the aid of an interpreter was not needed.) He was represented through the pre-trial stages and at trial by experienced counsel, who at every stage explained and counseled the Defendant concerning our criminal procedures and his rights hereunder. Paraphrasing the statement of Justice Souter, [*concurring in Breard v. Greene*, 523 U.S. 371, 379, 118 S.Ct. 1352, 1356, 140 L.Ed.2d 529] we find that there lacks [sic] any reasonable arguable causal connection between the alleged treaty violation and the Defendant's conviction entitling him to relief.

N.T., Trial Court Opinion, 11/12/99, at 5.

¶ 18 The U.S. Supreme Court and other federal courts faced with Article 36 claims have uniformly expressed the need for a showing of prejudice in order to obtain relief. In the context of federal habeas jurisdiction, the U.S. Supreme Court observed, in *dicta*, "[I]t is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial." *Breard v. Greene*, 523 U.S. 371, 377, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998). *See U.S. v. Esparza–Ponce*, 193 F.3d 1133 (9th Cir. 1999) (alien must show denial of rights under Vienna Convention resulted in prejudice).

¶ 19 We find that Appellant's Convention treaty rights have been waived. Furthermore, the treaty would not serve as a basis for relief, both because of the general consideration that a treaty does not confer individual rights and because Appellant suffered no prejudice from the violation of Article 36 of the Vienna Convention.

¶ 20 Order affirmed.